IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TANYATTA WOODS, as the personal representative of the Estate of DEUNDREZ WOODS, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) CASE NO. ) |
| MADISON COUNTY, ALABAMA; BLAKE DORNING; STEVE MORRISON; ADVANCED CORRECTIONAL HEALTHCARE, INC.; NORMAN JOHNSON, M.D.; ARTHUR M. WILLIAMS, M.D.; MARY ANN JONES; DEMETRUS JOHSON; MARIA SANCHEZ; and THERESA SYLVESTRE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Tanyatta Woods complains of defendants, stating as follows:

### Nature of the Action

1.  This is a civil action brought by Tanyatta Woods, whose decedent, Deundrez Woods, was denied certain constitutional rights by defendants while incarcerated in the Madison County Jail.  Specifically, defendants were deliberately indifferent to Deundrez Woods' serious medical needs in violation of his rights as

a pretrial detainee under the Fourteenth Amendment to the United States Constitution. Plaintiff also brings state law claims against the health care defendants.

## Jurisdiction and Venue

2.     This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3.     This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## Parties

4.     Tanyatta Woods is of legal age and a citizen and resident of the state of Alabama. She resides in Madison County, Alabama. She is the mother of Deundrez and the duly-appointed representative of his estate.

5.     Defendant Madison County, Alabama is an Alabama county. It is responsible for funding the Madison County Jail, including medical care at the jail. It contracted with defendant Advanced Correctional Healthcare, Inc. to provide medical services at the Madison County Jail.

6.     Defendant Blake Dorning was the Madison County Sheriff at all relevant times. As the sheriff, among other things, he is responsible for management of the

Madison County Jail. Defendant has a statutory duty under Alabama law to attend to the medical needs of inmates in the Madison County Jail. He is sued in his individual capacity only.

7. Defendant Steve Morrison served as the jail administrator of the Madison County Jail at all relevant times. He is sued in his individual capacity only.

8. Defendant Advanced Correctional Healthcare, Inc. (ACH) is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates in the Madison County Jail.

9. Defendant Norman R. Johnson , M.D. is a physician who serves as the CEO of ACH. He is sued in his individual capacity only.

10. Defendant Arthur M. Williams, M.D. is a physician who was employed by ACH to provide physician medical services and to be the director of the medical program for inmates at the Madison County Jail.

11. Defendant Mary Ann Jones is a Licensed Practical Nurse employed by ACH to provide nursing services at the Madison County Jail at all relevant times. She is sued in her individual capacity only

12. Defendant Demetrus Johnson is a Licensed Practical Nurse who was employed by ACH to provide nursing and medical services for inmates at the Madison County Jail at all relevant times.

13. Defendant Maria Sanchez is a Licensed Practical Nurse who was

employed by ACH to provide nursing services for inmates at the Madison County Jail at all relevant times.

14. Defendant Theresa Sylvestre a Licensed Practical Nurse who was employed by ACH to provide nursing services for inmates at the Madison County Jail at all relevant times.

## Facts

15. Deundrez Woods, a 19-year-old Huntsville resident, was arrested on third degree assault and shoplifting charges and placed in the Madison County Jail on or about June 24, 2013.

16. Woods experienced a severe and sudden change in mental functioning in late July and early August 2013 that led to Woods being moved into a medical observation cell on August 6, 2013.

17. From August 6 until he was found near death on August 19, 2013, Woods' condition deteriorated. During this time period, it was clear that something was seriously wrong with Woods.

18. On August 19, Woods was found completely non-responsive, and emergency personnel were called, but it was too late. Woods died two days later at Huntsville Hospital.

19. While Woods had behaved normally for over a month, jail records show

that by August 6, Woods was confused, hallucinating, and unable to communicate with correction and medical personnel.

20.   Woods was suffering from the effects of gangrenous right foot.

21.   Woods' mental status change was due to that infection, and he ultimately died from a blood clot that originated in his gangrenous foot.

22.   Because of Woods' uncooperative behavior, Woods was tased on at least 3 occasions (on August 6, 9, and 14 (early morning)).

23.   From August 7 until Woods was found near death on August 19, Woods' vital signs were never taken.

24.   From August 7 until Woods was found near death on August 19, Woods' intake of food and water was not monitored, though correction and medical personnel were aware Woods was not eating or drinking.

25.   There is no record of Woods eating or drinking after he was placed in a medical observation cell on August 6, and jail records affirmatively show Woods did not eat from August 14-19 and that as of August 12 Woods' water supply was cut off.

26.   Jail records also show Woods was naked during this period.

27.   From the evening of August 14, until emergency personnel were called on August 19, Woods lay naked in his cell not responsive to verbal commands.

28.   From the evening of August 14, 2013, until Woods was found near death on August 19, Woods lay in his cell dying before the eyes of correction and ACH

5

personnel.

29. He did not drink.

30. He did not eat.

31. He did not make any noise.

32. He did not stand.

33. He just lay there, naked, sometimes changing positions.

34. The gangrenous wound on the top of his right foot was clearly visible had anyone bothered to look.

35. As he lay there, he produced a foul odor due to his gangrenous foot and the leakage of bodily fluids.

36. By August 17, the odor was so bad correction officers dragged Woods from his cell to the shower, sprayed him with water, and then placed him, still naked, in a different cell.

37. Still, no correction officer or ACH nurse did anything to even check Woods, let alone help him.

38. During this entire period (August 14 to 19), no ACH nurse took Woods' temperature, checked his blood pressure, checked his blood sugar, or otherwise attempted to assess Woods' condition.

39. In fact, after August 14, no ACH nurse even bothered to enter Woods' cell until August 19, when he was already all but dead.

40. Defendant Williams, though aware of Woods' condition, did not even bother to check him after August 7.

41. Woods went from normal, to aggressive and disruptive, to barely responsive, to all but dead as correction and medical staff watched.

42. Woods died as a result of defendants' complete failure to assess or address his obvious medical needs.

43. Each of the individual defendants except for Dorning, Morrison, and Johnson worked on or after August 14, saw Woods' condition, knew Woods was not eating or drinking, knew Woods was barely or non-responsive, understood Woods' condition was serious and life-threatening, yet took no action.

44. Woods' condition as of August 14, at the latest, clearly indicated a potentially life-threatening problem.

45. By August 14, at the latest, the individual defendants except Dorning, Morrison, and Johnson were aware that Woods had gone from normal to barely or non-responsive over the course of 2-3 weeks.

46. By August 14, at the latest, it was obvious to all that came in contact with Woods that his condition was serious and that he needed to go to a hospital for evaluation and treatment.

47. Woods' need for evaluation and treatment in a hospital was such that it would have been obvious even to a layperson.

48. It was obvious to correction officers and medical personnel alike.

49. Despite Woods' condition, Woods received no medical assessment or treatment of any kind; defendants just watched Woods' condition deteriorate until he was all but dead.

50. As a direct and proximate result of the failure and refusal of the individual defendants except Dorning, Morrison, and Johnson to refer Woods for evaluation and treatment in a hospital, Woods suffered pain and suffering and eventually died.

51. All defendants were jointly and severally the proximate cause of Woods' pain and suffering and eventual death.

52. The actions of correction and medical personnel indicate systemic breaches of fundamental standards of correctional management and correctional health care.

53. These breaches are indicative of inadequate policies and practices and inadequate training and supervision.

54. The treatment of Woods falls far below the standard of correctional health care.

55. Because Woods was not appropriately treated, he experienced unnecessary pain and suffering and eventually died.

56. All of the individual defendants identified above acted with malice

and/or with reckless disregard for Woods' constitutional rights.

57. Woods' serious medical needs were ignored because of the customs or policies of defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH of deliberate indifference to the serious medical needs of inmates in the Madison County Jail.

58. With deliberate indifference to the serious medical needs of inmates, defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH failed to develop and implement adequate policies and procedures for the handling of inmates with serious health conditions and failed to adequately train correction and medical staff, with the foreseeable result that inmates such as Woods would not receive appropriate treatment.

59. More generally, defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH have established deliberately-indifferent customs or policies concerning inmate medical care, including but not limited to a custom or policy of delaying or denying necessary medical treatment to avoid liability for inmate medical bills.

60. Defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH were also part of an explicit or implicit agreement or plan to delay or deny necessary medical care to avoid having to pay for medical care for the inmate. This plan included a custom or policy of delaying or denying necessary medical treatment

by outside providers. Defendants were aware this policy created a substantial risk of serious harm and inflicted unnecessary pain and suffering on inmates.

61. Defendants Madison County, Dorning, Morrison, Johnson, Williams, and ACH were on notice that the above-described customs or policies regarding medical care for inmates were harmful to the health of inmates and caused them to experience unnecessary pain and suffering due to delay and denial of necessary medical care. Defendants had such knowledge from inmate complaints, communications from correction officers, from their own observations, from common sense, from other deaths, from other lawsuits, and in other ways.

62. During 2013 at least 2 other inmates died while in the Madison County Jail under similar circumstances, Tanisha Jefferson (date of death October 31, 2013) and Nikki Listau (date of death March 12, 2013).

63. The circumstances of Listau's death are described in the first amended complaint filed in that case (No. 5:14-CV-1309-CLS).

64. The circumstances of Jefferson's death are described in the complaint filed in that case (No.5:14-CV-1959-AKK).

65. To a large extent, these constitutionally-deficient policies and practices regarding inmate medical care were created and implemented by the agreement between Madison County, Dorning, and ACH.

66. The agreement, among other things, requires ACH to provide substantial

insurance coverage, to name the county and the sheriff as additional insureds, and to indemnify the sheriff, the county, and their agents and employees in connection with any claim related to health care services.

67. In whole or in part because of the agreement, Madison County, Dorning, and Morrison have failed and refused to address known systemic deficiencies regarding medical care at the Madison County Jail.

68. Under the agreement, for Madison County to avoid liability for excess medical care expenses, it was necessary for defendants Dorning and Morrison and the correction officers they managed to cooperate with ACH in controlling costs.

69. Defendants Madison County and ACH and all individual defendants were aware the cost control measures implemented at the Madison County Jail by ACH resulted in the denial of constitutionally-required medical care for inmates with serious medical needs such as Listau.

70. ACH's business model, reflected in the agreement, succeeds by underbidding the competition and implementing severe cost control measures, the necessary result of which is unnecessary inmate suffering and liability claims (dealt with through liability insurance).

71. The primary areas in which cost control measures were implemented were staffing, medications, and referrals to outside providers.

72. In order to control costs, defendant ACH, with the knowledge and

consent of defendants Madison County, Dorning, and Morrison, staffed the Madison County Jail inadequately, hired sub-standard medical personnel willing to put costs over inmate health and safety, denied inmates medications, and delayed or denied medically-necessary referrals to outside providers, including necessary medical treatment like that denied Woods.

73. Alabama law vests final policymaking authority for inmate medical care in Dorning, as the representative of Madison County.

74. Defendants Madison County and Dorning, in turn, via the agreement with ACH, have delegated final policymaking authority regarding inmate medical care to ACH, and, therefore, they are liable for ACH decisions.

75. While the agreement gives Dorning and Madison County authority to hold ACH accountable regarding the costs of inmate health care, it provides no mechanism for reporting and accountability regarding the quality of inmate health care, and neither Dorning nor Madison County have made any effort to hold ACH accountable for how it handles inmate health care.

76. To the contrary, Dorning and Morrison have trained correction personnel to defer to ACH regarding medical matters and, as a matter of policy and practice, to assist ACH in controlling costs by having individuals who need outside treatment released from jail and by allowing ACH to make all decisions regarding referrals to outside providers, including emergency room referrals.

77. Defendant ACH acted through one or more individuals who acted as final policymakers for ACH, including defendant Williams.

78. Defendant Madison County caused or contributed to the above-described customs or policies by not providing adequate funds for medical treatment for the inmates in its custody, by continuing to retain ACH despite knowledge of ACH's policies and practices, and in other ways.

79. All defendants acted jointly and in concert with each other. Each defendant had the duty and the opportunity to protect Woods, to obtain necessary medical treatment for Woods in a timely manner and/or to establish policies and procedures and implement training regarding such treatment, but each defendant failed and refused to perform such duty, thereby proximately causing Woods' pain and suffering and eventual death.

80. All defendants, acting under color of state law, inflicted or caused to be inflicted cruel and unusual punishment upon Woods in violation of the Fourteenth Amendment to the United States Constitution. All defendants acted with deliberate indifference.

81. All defendants acted with intent to violate Woods' constitutional rights or with reckless disregard for those rights, justifying punitive damages against the individual defendants and ACH.

82. As a result of the conduct of defendants, Woods suffered physical and

emotional injuries and then died.

## Count I - 42 U.S.C. § 1983 -
## Deliberate Indifference to Serious Medical Needs

83. The individual defendants except Dorning, Morrison, and Johnson, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Woods' serious medical needs as described above. These defendants, despite knowledge of a serious medical need, took no action or clearly inadequate action and did thereby deprive Woods of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

84. Defendants Dorning, Morrison, Johnson, and Williams are supervisory officials for the jail and were responsible for development and implementation of policies and procedures for medical care at the jail and by action and inaction established the unconstitutional customs and policies described above. These defendants did thereby deprive Woods of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

85. Defendant Madison County intentionally refused to adequately fund medical care as described above with deliberate indifference to the serious medical needs of inmates such as Woods, had a policy of not adequately funding inmate

medical care, and did thereby contribute to cause Woods' injuries and the individual defendants' denial of necessary medical treatment for Woods' serious medical need.

86. Defendants Madison County and Dorning are also liable for the acts of ACH and its policymakers, including Johnson and Williams, as Madison County and Dorning delegated their final policymaking authority to them.

87. As a result of the conduct of defendants, Woods was caused to suffer physical and emotional injuries and damages and died.

## Count II - Negligence / Wantonness

88. The individual ACH defendants and unknown ACH employees involved with Woods' care owed a duty to Woods to meet the standard of care applicable to inmates and/or to make sure those under their supervision were trained adequately regarding the proper care of such inmates and that adequate policies and procedures regarding the proper care of such inmates were in place. This standard of care required, among other things, proper treatment of Woods' deteriorating condition, appropriate monitoring of Woods' deteriorating condition, testing to determine the cause of Woods' mental status change and deteriorating condition, and referral of Woods for evaluation and treatment outside of the jail. These defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Woods suffered unnecessary pain and suffering and died.

89. Because ACH personnel were acting within the scope of their employment, defendant ACH is liable for their negligence and/or wantonness.

**Other Matters**

90. All conditions precedent to the bringing of this suit have occurred.

**Relief Sought**

91. As relief, plaintiff seeks the following:

    a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

    b. That plaintiff be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

    c. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

    d. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

    e. That plaintiff be awarded appropriate declaratory and injunctive relief; and

    f. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

Respectfully submitted,

s/ Henry F. Sherrod III
Henry F. Sherrod III (ASB-1200-D63H)
HENRY F. SHERROD III, P.C.
119 South Court Street (35630)
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Jerry D. Roberson (ASB-8283-O71J)
P.O. Box 657
Haleyville, Alabama 35565
Phone: 205-485-1020
Fax: 205-485-2660
Email: jerry@jdrlaw.org

Attorneys for Plaintiff

**Jury Demand**

Plaintiff requests a trial by jury.

s/ Henry F. Sherrod III
Henry F. Sherrod III